UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STARBRANDS CAPITAL LLC, * <br> D/B/A NORCAL HEALTH SERVICES, * <br>  * <br> Plaintiff, * <br>  * <br> v. * <br>  * <br> ORIGINAL MW INC., * <br>  * <br> Defendant. * | Civil Action No. 14-cv-12270-ADB |

## ORDER

**I.   BACKGROUND**

On May 23, 2014, Plaintiff Starbrands Capital LLC, d/b/a NorCal Health Services ("Starbrands") filed this action against Defendant Original MW Inc. ("MW"), a third-party payment processor located in Massachusetts. Starbrands' Amended Complaint alleges claims for violation of Article 4A of the Massachusetts Uniform Commercial Code (Count I); breach of contract (Count II), and negligence (Count III). See Docket No. 20 ("Compl."). On September 9, 2014, MW moved to dismiss Starbrands' Amended Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. See Docket No. 26. MW also moved for sanctions against Starbrands for allegedly failing to confer in good faith regarding MW's motion to dismiss Starbrands' original complaint. See Docket No. 29.

On October 14, 2014, this case was referred to Magistrate Judge Boal for full pretrial proceedings and a report and recommendation on any dispositive motions. See Docket No. 32. The parties appeared for a hearing on MW's motions on May 27, 2015, and the Magistrate Judge issued a Report and Recommendation on August 14, 2015. See Docket No. 45 ("R&R"). For reasons fully explained therein, Magistrate Judge Boal recommended that MW's Motion to

Dismiss be <u>allowed</u> with respect to Starbrands' U.C.C. Claim (Count I) and its negligence claim (Count III), but <u>denied</u> with respect to Starbrands' breach of contract claim (Count II). She further recommended that the Court deny MW's Motion for Sanctions. <u>See</u> Docket No. 45 ("R&R").

Plaintiff Starbrands filed no objection to the Report and Recommendation. On August 28, 2015, MW filed limited objections, in which it objects only to Magistrate Judge Boal's recommendation that the breach of contract claim be allowed to go forward. <u>See</u> Docket No. 46 ("Objections"). Accordingly, the Court must now "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); <u>see also</u> Fed. R. Civ. P. 72(b). After reviewing the underlying motion papers, the Report and Recommendation, and MW's Objections, the Court finds that the Report and Recommendation should be adopted in full, for the reasons stated therein. Although it is unnecessary to reiterate Magistrate Judge Boal's analysis, the Court will address specific arguments raised by MW in its Objections.

II. ANALYSIS

MW asserts several reasons why Starbrands' breach of contract claim should be dismissed, none of which carry the day.

**A. The indemnity clause is not limited to claims against Starbrands.**

Starbrands' breach of contract claim is premised upon an indemnification clause in Paragraph 26.2 of the parties' Agreement, which requires MW to

> indemnify and hold [Starbrands] harmless from and against all losses, liabilities, damages and expenses resulting from any breach of any warranty, covenant or agreement or any misrepresentation by [MW] under this Agreement or arising out of [MW's] or [MW's] employees' gross negligence or willful misconduct in connection with this Agreement . . . .

2

Compl. Ex. E, ECF No. 20-5, ¶ 26.2. Starbrands seeks to invoke this indemnity provision to recoup direct losses it sustained when MW allegedly (and with gross negligence) allowed Starbrands' funds to be misdirected into an unauthorized bank account. MW, however, argues that its obligation to indemnify is triggered only when "claims" are asserted "against" Starbrands. In other words, Starbrands cannot seek indemnification from MW for direct losses, in the absence of a third-party claim against Starbrands.

As a threshold matter, MW cites no authority for the proposition that an indemnitor's contractual obligation to indemnify is strictly limited to "claims" made against the indemnitee. Rather, under Massachusetts law, contracts for indemnity, like all contracts, "'are to be fairly and reasonably construed to ascertain the intention of the parties and to effectuate their purpose.'" Kusiak v. Doherty, 79 Mass. App. Ct. 1102 (2011) (Rule 1:28 Decision) (quoting Whittle v. Pagani Bros. Constr. Co., 383 Mass. 796, 798 (1981)). Thus, any contractual agreement to indemnify must be interpreted "on its own terms, 'with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention.'" Id. (quoting Shea v. Bay State Gas Co., 383 Mass. 218, 222-23 (1981)). Accordingly, courts have held that under Massachusetts law, a contractual obligation to indemnify is not, as a general matter, limited to third-party claims against the indemnitee. See Kusiak, 79 Mass. App. Ct. at 1102 ("Indemnity contracts are not necessarily limited to third-party claims."); Caldwell Tanks, Inc. v. Haley & Ward, Inc., 471 F.3d 210, 216 (1st Cir. 2006) (absent "explicit language to the contrary," an indemnity agreement should not be read as applying exclusively to third-party claims).

The indemnity clause at issue here is exceedingly broad, requiring MW to indemnify Starbrands "from and against all losses, liabilities, damages and expenses . . . arising out of"

3

MW's gross negligence or intentional misconduct in connection with the parties' Agreement. See Compl. Ex. E, ¶ 26.2. The plain text of this provision does not suggest that MW's indemnity obligation is limited to "claims," or that it is limited to claims "against" Starbrands. In fact, the word "claim" appears nowhere in Paragraph 26.2. Furthermore, the inclusion of the term "loss," in addition to and separate from the term "liabilities," suggests that the parties contemplated indemnification for losses other than liabilities arising from third-party claims. See id.; see also Black's Law Dictionary (10th ed. 2014) (noting that "indemnify" means to "reimburse (another) for a loss suffered because of a third party's or one's own act or default") (parentheses in original). In sum, there is little support for MW's contention that its indemnity obligation is triggered only by "claims" against Starbrands. Rather, the parties' Agreement requires MW to reimburse Starbrands for "losses" suffered as a result of MW's gross negligence. Here, Starbrands has plausibly alleged gross negligence on the part of MW, along with corresponding losses, and a refusal by MW to reimburse. See, e.g., Compl. ¶¶ 80-90. Because Starbrands has stated a viable claim for breach of contract, MW's first objection is overruled.[1]

---

[1] The Court has also considered MW's argument that Magistrate Judge Boal's interpretation of the indemnity clause renders it "inconsistent" with a separate provision of the parties' Agreement, which purports to exempt MW from liability for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect, or consequential damages. See Compl. Ex. E ¶ 20.3. The Court finds that there is nothing inconsistent about these two provisions. It is not uncommon for parties to carve out limitations of liability for certain types of consequential or special damages, without compromising their liability for direct damages. See, e.g., Callisto Corp. v. Inter-State Studio & Pub. Co., No. CIV.A. 05-11953-GAO, 2006 WL 1240711, at *1-*2 (D. Mass. May 4, 2006) (holding that the phrase "loss of revenue or profit" as used in a limitation of liability clause referred to "revenues and losses in a consequential sense," but that it did not exclude liability for royalty payments which were the "fruit of the [parties'] Agreement") (alteration in original).

### B. The Court does not lack subject-matter jurisdiction, because the $50,000 limitation-of-liability clause is unenforceable.

MW's next two objections pertain to the enforceability of a clause in the parties' Agreement that limits MW's cumulative liability to $50,000. See Compl. Ex. E, ¶ 20.4. MW argues that this clause is enforceable, and that it places a hard cap on the amount in controversy, which will necessarily be less than the $75,000 required for the Court to have subject-matter jurisdiction in a diversity case. See Sanchez-Arroyo v. E. Airlines, Inc., 835 F.2d 407, 408 (1st Cir. 1987); 28 U.S.C. § 1332(a). Magistrate Judge Boal, however, noted that the limitation-of-liability provision would be unenforceable with respect to grossly negligent and/or intentional acts committed by MW, as a matter of public policy. She therefore recommended that the limitation clause be ignored for purposes of determining the amount-in-controversy. See R&R pp. 12-13.

In its Objections, MW advances two arguments on this point. First, MW argues that Magistrate Boal erred as a matter of law in finding that the $50,000 limitation-of-liability clause was unenforceable. Second, MW contends that Magistrate Judge Boal found the clause unenforceable only with respect to Starbrands' tort claims, and that there is "no dispute" that the limitation-of-liability provision remains fully enforceable with respect to Starbrands' breach-of-contract claim in Count II. Consequently, the Court lacks subject-matter jurisdiction over the breach-of-contract claim (which is now the only remaining claim). The Court rejects both of these arguments.

### 1. The Magistrate Judge correctly concluded that public policy precludes not only total releases of liability, but also limitations on liability for grossly negligent and/or intentional acts.

Courts within this judicial district have consistently held that under Massachusetts law, a party may not indemnify or wholly exempt itself from liability for its grossly negligent or intentional conduct. See Burten v. Milton Bradley Co., 763 F.2d 461, 465 (1st Cir. 1985)

5

(holding that under Massachusetts law, it is "clearly against public policy for one party to attempt to exempt itself from liability for its own gross negligence"); Angelo v. USA Triathlon, No. CIV.A. 13-12177-LTS, 2014 WL 4716195, at *4 (D. Mass. Sept. 19, 2014) (concluding that "Massachusetts courts would not enforce an indemnity provision insofar as it relieved a party from liability stemming from its own gross negligence"); see also CSX Transp., Inc. v. Massachusetts Bay Transp. Auth., 697 F. Supp. 2d 213, 227 (D. Mass. 2010) (concluding that the Massachusetts Supreme Judicial Court "would not enforce an indemnity agreement covering gross negligence").

MW seeks to distinguish these cases, arguing that the $50,000 limitation of liability clause in the parties' Agreement is enforceable because it does not purport to completely relieve MW from liability, but merely represents a monetary cap on such liability. This cap, MW argues, was freely bargained for in the context of an arms-length commercial relationship, represents a reasonable allocation of risk, and should be enforceable in this context. See Objections pp. 12-13.

MW concedes, however, that it is not aware of any Massachusetts authority adopting a distinction between total and limited releases from liability for gross negligence. Id. p. 12. The Court does not find the distinction urged by MW to be appropriate. Permitting parties to limit their liability for gross negligence or intentional torts via contract could fail to adequately disincentivize, punish, or compensate for wrongful conduct. Any limitation of liability for gross negligence violates public policy, regardless of whether such limitations are negotiated in an arms-length commercial relationship. See Clement v. Western Union Tel. Co., 137 Mass. 463, 466 (1884) (suggesting that gross negligence or fraudulent conduct would subject party to liability for actual damages, even if those damages exceeded a sum contractually agreed upon by

the parties). Accord Core-Mark Midcontinent, Inc. v. Sonitrol Corp., 300 P.3d 963, 970 (Colo. Ct. App. 2012) ("Because of the egregiously wrongful nature of the conduct, enforcing a limitation of liability provision to shield a party from the consequences of such conduct is deemed to be contrary to public policy."). Thus, the Court finds no error in the Magistrate Judge's conclusions on this point, and holds that the $50,000 limitation-of-liability clause is unenforceable to the extent that Starbrands seeks damages arising out of MW's grossly negligent acts.

### 2. Magistrate Judge Boal expressly found that the $50,000 limitation provision is unenforceable with respect to Starbrands' breach-of-contract claim.

Next, MW contends that when the Magistrate Judge found the $50,000 limitation-of-liability clause to be unenforceable, she "only held that the provision was unenforceable with respect to [tort] claims for gross negligence," and "there is no dispute that the liability limitation provision is enforceable with respect to claims for breach of contract." Objections p. 9. MW, however, misunderstands Magistrate Judge Boal's Report and Recommendation on this point. Before concluding that the $50,000 limitation clause was unenforceable, she explicitly stated that she was analyzing enforceability "with respect to Starbrands' breach of contract claim." R&R p. 12. She further explained that, to the extent Starbrands' breach-of-contract claim is premised upon MW's obligation to indemnify Starbrands for losses arising out of MW's gross negligence, the provision is unenforceable as a matter of public policy. Thus, Magistrate Judge Boal did not determine that the limitation of liability provision is unenforceable "as applied to claims for gross negligence only," and the Court rejects MW's suggestion to the contrary.

Furthermore, as a legal matter, the Court disagrees with MW's suggestion that the enforceability of an agreement purporting to limit liability for gross negligence should depend on

7

whether a claim sounds in tort or contract. Defendant does not cite, nor has this Court found, any Massachusetts decisions directly on point. But the weight of authority in other jurisdictions suggests that there is no valid basis for any such distinction. See, e.g., Gold Connection Discount Jewelers, Inc. v. American Dist. Tel. Co., 622 N.Y.S.2d 740, 741 (N.Y. App. Div. 1995) ("Although such clauses in commercial contracts are enforceable to limit recovery for claims based on ordinary negligence, they will not preclude recovery in tort or breach of contract where the losses are the result of gross negligence."); Civic Ctr. Drive Apartments Ltd. P'ship v. Sw. Bell Video Servs., 295 F. Supp. 2d 1091, 1106 (N.D. Cal. 2003) (holding that under California law, a limitation of liability provision is unenforceable if it violates public policy, *even if* the plaintiff asserts only a breach of contract claim); Core-Mark Midcontinent, Inc., 300 P.3d at 970-71 (collecting cases, and rejecting defendant's argument that "refusing to enforce a limitation of liability provision in the context of a claim for willful and wanton breach of contract improperly blurs the distinction between tort and contract law"). In sum, the public policy considerations that prevent parties from avoiding liability for grossly negligent conduct apply regardless of whether the underlying claim sounds in tort or in contract.[2] MW's objections on this point are overruled.

### C. Starbrands' Count II is not time-barred.

In light of the foregoing, the Court need not address MW's alternative argument that Starbrands' claim in Count II is time-barred. This argument is contingent upon the Court choosing to construe the claim in Count II as a tort claim sounding in gross negligence, rather

---

[2] In a recent 2015 decision, the Massachusetts Supreme Judicial Court ("SJC") observed that "while a party may contract against liability for harm caused by its negligence, it may not do so with respect to its gross negligence." Maryland Cas. Co. v. NSTAR Elec. Co., 471 Mass. 416, 422 (2015) (quoting Zavras v. Capeway Rovers Motorcycle Club, Inc., 44 Mass. App. Ct. 17, 19 (1997)). Notably, the SJC referred to this rule as a "well-established principle of *contract* law." Id. (emphasis added).

than a breach of contract claim. Because the Court does not construe Count II in this way, MW's argument is inapposite.

Furthermore, the Court rejects MW's suggestion that by permitting Count II to go forward, the Court is "allowing Starbrands to convert a tort claim . . . into a breach of contract claim." Objections, p. 6. Starbrands' contract claim is premised on MW's failure to indemnify Starbrands for its losses, in accordance with Paragraph 26.2 of the parties' Agreement. Under the Agreement, MW's obligation to indemnify is expressly limited to situations where Starbrands' loss arises out of MW's gross negligence or willful misconduct. Therefore, in order to prove that MW breached the Agreement, Starbrands will be required to prove, inter alia, that MW's grossly negligent or intentional conduct caused its losses. This does not, however, fundamentally transform Starbrands' breach of contract claim into a tort claim.

### III.   CONCLUSION

For the foregoing reasons, the Defendant's objections to the Magistrate Judge's Report and Recommendation are overruled, and the Court ACCEPTS AND ADOPTS the Report and Recommendation (Docket No. 45) in its entirety. Accordingly, Defendant's Motion to Dismiss (Docket No. 26) is ALLOWED with respect to Count I (Article 4 of the U.C.C.) and Count III (negligence), and DENIED with respect to Count II (breach of contract). Defendant's Motion for Sanctions (Docket No. 29) is DENIED.

**SO ORDERED.**

Dated: September 11, 2015

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
DISTRICT JUDGE