UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                              )
STARBRANDS CAPITAL, LLC                       )
d/b/a NORCAL HEALTH CARE                       )
SERVICES,                                      )
                                              )
                    Plaintiff,                 )
                                              )
v.                                             )        Civil Case No. 14-12270-ADB
                                              )
ORIGINAL MW INC.,                              )
                                              )
                    Defendant.                 )
_____)

**REPORT AND RECOMMENDATION ON DEFENDANT'S
SECOND MOTION TO DISMISS THE AMENDED COMPLAINT**

[Dkt. No. 54]

January 7, 2016

Plaintiff Starbrands Capital LLC d/b/a NorCal Health Care Services ("Starbrands")

brings this action against defendant Original MW Inc. ("MW").  On September 9, 2014, MW

moved to dismiss Starbrands' complaint.  Dkt. No. 26.  On August 14, 2015, this Court

recommended that the District Judge dismiss Starbrands' claims for negligence and violation of

Article 4A of the Massachusetts Uniform Commercial Code, but not its breach of contract claim.

Dkt. No. 45.  After de novo review, the District Judge adopted this Court's recommendation on

September 11, 2015.  Dkt. No. 49.

MW has now submitted a second motion which seeks to dismiss Starbrands' remaining

claim for breach of contract.[1]  Dkt. No. 54.  Specifically, MW argues that Starbrands' claim for

---

[1] A party that makes a motion under Rule 12 of the Federal Rules of Civil Procedure must not
make another motion under the same rule raising a defense or objection that was available to the
party but omitted from its earlier motion.  See Fed. R. Civ. P. 12(g)(2).  Here, MW maintains

breach of contract is precluded by a March 26, 2015 California state court decision in <u>Norcal</u>

<u>Health Care, Inc. et al v. Starbrands Norcal MSO, LLC, et al.</u>, RG-12623651 (March 26, 2015,

Super. Ct. Cal., Alameda County) (the "California Action"). For the following reasons, the

Court recommends that the District Court deny MW's motion.[2]

## I.    FACTUAL AND PROCEDURAL BACKGROUND[3]

### A.    The Instant Case

Starbrands is a venture capital firm incorporated in Delaware with a principal place of

business in California. Dkt. No. 20 at ¶ 4 (Amended Complaint, "Compl."). It does business as

NorCal Health Care Services. <u>Id.</u> ¶ 1. MW is a third-party payment processor based in

Massachusetts. <u>Id.</u> ¶¶ 5-6. MW provides point of sale terminals to merchants, which enable a

customer to swipe a debit or credit card to consummate a sale. <u>Id.</u> ¶ 7.

On January 11, 2010, Starbrands established a merchant account with MW. <u>Id.</u> ¶ 11, Ex.

A ("Agreement"). MW agreed to provide payment processing services and, in return, Starbrands

_____

that the California judgment did not become final until May 26, 2015, approximately six months
after it filed its first motion to dismiss. Accordingly, the collateral estoppel argument could not
have been included in the first motion to dismiss. Nevertheless, the purpose of Rule 12(g)(2) is
to prevent dilatory motion practice and to eliminate unnecessary delay. <u>See</u> 5C Charles Alan
Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 1384 (3d ed.
2004). While MW alerted the Court to its intention to file a second motion to dismiss if the first
motion was not completely successful, <u>see</u> Dkt. No. 46 at n.2, the better course would have been
to amend its first motion to dismiss in accordance with Fed. R. Civ. P. 15(a)(2). MW had ample
time to do so, and could have raised its estoppel defense prior to oral argument on the first
motion to dismiss, which was held on May 27, 2015, or any time prior to this Court's report and
recommendation, which was issued on August 14, 2015. Dkt. Nos. 42, 45.

[2] The District Court referred this case to the undersigned for full pretrial proceedings and a report
and recommendation on any dispositive motions on October 14, 2014. Dkt. No. 32.

[3] Because this case is presently before the Court on a motion to dismiss, the Court sets forth the
facts taking as true all well-pleaded allegations in the Amended Complaint and drawing all
reasonable inferences in Starbrands' favor. <u>See</u> <u>Morales-Tañon v. Puerto Rico Electric Power</u>
<u>Authority</u>, 524 F.3d 15, 17 (1st Cir. 2008).

agreed to pay a monthly fee and a "swipe fee" percentage of all sales. Id. ¶ 19, Ex. E ¶ 18.1.

The Agreement identified Omar Salah ("Salah") as the owner of Starbrands and the contact

person for the account. Id. ¶ 12. The Agreement also identified a Chase Bank account as the

recipient bank account for funds. Id. ¶ 13. The Agreement incorporated a "Program Guide,"

which contained an indemnification clause wherein MW promised to indemnify Starbrands for

certain losses:

> [MW] agree[s] to indemnify and hold [Starbrands] harmless from
> and against all losses, liabilities, damages and expenses resulting
> from any breach of any warranty, covenant or agreement or any
> misrepresentation by [MW] under this Agreement or arising out of
> [MW's] or [MW's] employees' gross negligence or willful
> misconduct in connection with this Agreement . . . .

Exs. A at 4, E ¶ 26.2.[4]

Starbrands alleges that in or around June 2010, Dr. Michael Caplan, an independent

contractor who provided services to Starbrands in his capacity as a medical doctor, began to

transfer all of Starbrands' assets and operations—such as leases, employment contracts, and

financing agreements—into entities he controlled. Compl. ¶¶ 21, 41, 48. Specifically, Dr.

Caplan submitted a change request application, MW processed the change request, and MW

began sending funds to Dr. Caplan's account until Salah closed the account in October 2012. Id.

¶¶ 24, 33, 35, 54. Starbrands alleges that in doing this, Dr. Caplan fraudulently sought to redirect

funds from Starbrands' credit and debit card terminals to a bank account for a shell company he

created named NorCal Health Care., Inc. ("Norcal"). Id. ¶¶ 22, 33, Ex. B. Starbrands believes

that during this time period, MW wrongly transferred approximately $1,433,089.11 to Dr.

Caplan. Id. ¶ 54.

---

[4] When citing the parties' pleadings and exhibits, page numbers refer to those assigned by ECF, rather than the original page numbers.

The remaining claim for breach of contract arises from, inter alia, Starbrands' allegation that MW was not authorized to accept a request to change the recipient bank account without Salah's consent. Id. ¶ 23. The change request listed Starbrands' correct merchant account number and business address, but it was not signed by Salah, and it listed a recipient bank account, federal tax identification number, and a merchant name—Norcal— that did not correspond to Starbrands. Id. ¶¶ 33–36, Ex. B. According to Starbrands, MW failed to take any security precautions before approving the change request and never sent a notification of this change to Starbrands. Id. ¶¶ 36-37, 43, 45.

On October 9, 2015, MW filed a second motion to dismiss with respect to the remaining breach of contract claim. Dkt. No. 54. Starbrands opposed the motion on October 30, 2015, and the Court heard oral argument on December 16, 2015. Dkt. Nos. 66, 70.

### B. The California Action

In September 2013, Norcal and Dr. Michael Caplan brought suit against Starbrands Norcal MSO, LLC, Salah, and other defendants ("California Defendants") in a California state court. Dkt. No. 56, Ex. A. Starbrands Norcal MSO, LLC ("Starbrands Norcal") is a limited liability company formed under the state of California with a principal place of business in California. Id. ¶ 3. The California Action sought declaratory relief, a temporary restraining order, and preliminary and permanent injunctions based on claims for, inter alia, fraud, trespass, battery, intentional infliction of emotional distress, and breach of contract. Dkt. No. 56, Ex. A.

On March 26, 2015, after a default judgment was issued against the California Defendants, and a prove-up hearing was held in which no defendants appeared, a California state court issued a judgment in favor of the plaintiffs in that action—Norcal and Dr. Caplan. Dkt. No. 56, Ex. F. The judgment declared that the contract at issue in that case between Norcal and

defendant Starbrands Norcal had been properly terminated by one of the plaintiffs.  Id. at 2.

Further, the judgment enjoined Starbrands Norcal from:

1. Entering on to the premises of any facility or business operated by [Norcal or Dr. Caplan.]
2. Asserting any interest in, ownership of, or control over any medical clinic operated by [Norcal].
3. Interfering in any way with [Norcal's] operation of its medical clinics and/or relationships with its patients, contractors, vendors, employees, lenders, lessors, and/or clientele.

Id.  MW argues that this judgment precludes Starbrands' breach of contract claim against MW.

## II.     STANDARD OF REVIEW

### A.     Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  Decotiis v. Whittemore, 635 F.3d 22, 28–29 (1st Cir. 2011) (citation omitted).  While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions.  Iqbal, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  See also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-

unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'")

(citations omitted). Accordingly, a complaint does not state a claim for relief where the well-

pleaded facts fail to warrant an inference of any more than the mere possibility of liability.

Iqbal, 556 U.S. at 679.

An affirmative defense may be adjudicated on a motion to dismiss for failure to state a

claim. See In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003). However,

such a dismissal may only occur when (1) the facts that establish the defense are definitively

ascertainable from the allegations of the complaint, the documents incorporated therein, matters

of public record, and other matters of which the court may take judicial notice; and (2) the facts

so gleaned conclusively establish the affirmative defense. See id.

### B. Scope Of The Record

#### 1. Standard Of Law

MW seeks judicial notice of nine documents related to the California Action that are

attached as exhibits to its second motion to dismiss. Dkt. No. 56.

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented

to and not excluded by the court, the motion must be treated as one for summary judgment under

Rule 56." Fed. R. Civ. P. 12(d). However, "under certain 'narrow exceptions,' some extrinsic

documents may be considered without converting a motion to dismiss into a motion for summary

judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v.

Page, 987 F.2d 1, 3 (1st Cir. 1993)). "These exceptions include documents the authenticity of

which are not disputed by the parties; official public records; documents central to plaintiffs'

claim; and documents sufficiently referred to in the complaint." Id. (internal quotations,

modifications, and citations omitted). Matters of public record that a court may consider

ordinarily include documents from prior state court adjudications.  <u>Giragosian v. Ryan</u>, 547 F.3d

59, 66 (1st Cir. 2008).  Indeed, the First Circuit has included state court decisions in its definition

of public record documents that are susceptible to judicial notice.  <u>See</u> <u>Freeman</u>, 714 F.3d at 37.

Deposition excerpts generally do not fall into any of these enumerated categories.  <u>See id.</u> at 36.

In addition, facts susceptible to judicial notice may also be considered.  <u>See</u> <u>Butler v.</u>

<u>Balolia</u>, 736 F.3d 609, 611 (1st Cir. 2013).  Pursuant to Rule 201 of the Federal Rules of

Evidence, a court may "judicially notice a fact that is subject to reasonable dispute because it: (1)

is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

readily determined from sources whose accuracy cannot be reasonably be questioned.  Fed. R.

Evid. 201.  A decision of a sister court is a proper matter of judicial notice.  <u>Berrios-Romero v.</u>

<u>Estado Libre Asociado de Puerto Rico</u>, 641 F.3d 24, 27 (1st Cir. 2011).  Furthermore, federal

courts may take judicial notice of proceedings in other courts if those proceedings have relevance

to the matters at hand.  <u>Martin v. Mead Johnson Nutrition Co.</u>, C.A. No. 09-11609, 2010 WL

3928710, at *2 (D. Mass. Sept. 13, 2010) <u>report</u> <u>and recommendation</u> <u>adopted</u> <u>in</u> <u>part,</u> <u>rejected</u> <u>in</u>

<u>part</u> <u>on</u> <u>other</u> <u>grounds,</u> C.A. No. 09-11609, 2010 WL 3928707 (D. Mass. Sept. 30, 2010).

2.  <u>Analysis</u>

In connection with its motion to dismiss, MW asks this Court to consider a number of

documents from the California Action.  Specifically, Exhibits A, B, C, D, and G are, from that

action respectively, the second amended complaint, an amended and restated management

agreement between Starbrands Norcal and Norcal, modifications to that agreement, the cross-

complaint, and an opposition memorandum to summary adjudication.  These documents concern

a separate dispute between Starbrands Norcal and Norcal, rather than between Starbrands and

MW, and contain disputed facts that were put forth by the parties for specific reasons that are

unique to the matters at issue in the California Action. For this reason, the Court will take notice of Exhibits A-D and G for the limited purpose of noting their subject matter, generally, and for determining whether issue preclusion applies.

Exhibits E, F, and I include the California state court judgments and the docket sheet in the California Action. As stated above, it is appropriate for the Court to take judicial notice of these orders, and of the state court record, when evaluating whether the elements of preclusion are met, and it will do so here. However, Exhibit H, which consists of an excerpt from a deposition of Salah in the California Action, is not appropriate for judicial notice, and the Court declines to consider it herein.

## III.     DISCUSSION

### A.     Issue Preclusion

Issue preclusion bars relitigation of an issue that has been actually litigated and decided, even if the issue recurs in the context of a suit based on an entirely different claim. In re Sonus Networks, Inc, S'holder Derivative Litig., 499 F.3d 47, 56 (1st Cir. 2007). The purpose of the doctrine is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudication. Boston Sci. Corp. v. Schneider (Europe) AG, 983 F. Supp. 245, 255 (D. Mass. 1997).

In accordance with the full faith and credit statute, 28 U.S.C. § 1738, a judgment rendered in state court is entitled to "the same preclusive effect in federal court as it would be given within the state in which it was rendered." In re Sonus Networks, Inc., 499 F.3d at 56 (analyzing issue preclusion effect of Massachusetts state court judgment under Massachusetts law); see also McGinest v. GTE Serv. Corp., 247 F. App'x 72, 74 (9th Cir. 2007). Thus, in determining the preclusive effect of the March 26, 2015 California state court judgment at issue

here, the Court looks to California's rules of preclusion. See, e.g., White v. City of Pasadena, 671 F.3d 918, 926 (9th Cir. 2012).

Under California law, six criteria must be satisfied before issue preclusion may be applied. In re Khaligh, 338 B.R. 817, 824-25 (B.A.P. 9th Cir. 2006), aff'd, 506 F.3d 956 (9th Cir. 2007). Five of these elements, described as threshold requirements, are:

> (1) The issue decided in a prior adjudication is identical with that presented in the action in question; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the former decision was final and on the merits; and (5) the party against whom preclusion is sought is either the same, or in privity with, the party in the former proceeding.

Id. The sixth element is a mandatory additional inquiry into whether the imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy. In re Khaligh, 338 B.R. at 824-25. In assessing this criteria, California courts consider the preservation of the integrity of the judicial system, the promotion of judicial economy, and the protection of litigants from harassment by vexatious litigation. Lucido v. Superior Court, 51 Cal. 3d 335, 343 (1990). The party asserting preclusion bears the burden of establishing these requirements. Id. at 342.

The "identical issue" requirement addresses whether identical factual allegations are at stake in the two proceedings, and not whether the ultimate issues or dispositions are the same. Id. at 342.

> Courts consider four factors to determine whether two issues are identical for issue preclusion purposes: (1) whether there is substantial overlap between the evidence or argument; (2) whether the second action involves application of the same rule of law as the prior action; (3) whether pretrial preparation in the first action is similar to pretrial preparation that would be required in the second; and (4) how closely related the two claims are.

Walia v. Aegis Ctr. Point Developers Private Ltd., C.A. No. 12-4660-CRB, 2014 WL 296003, at *3 (N.D. Cal. Jan. 27, 2014), appeal dismissed (July 1, 2014).

An issue is "actually litigated" when it is properly raised by the pleadings or otherwise, is submitted for determination, and is determined. Id. at *5. The failure of a litigant to introduce relevant available evidence on an issue does not necessarily defeat the application of collateral estoppel. Id. An issue has been "necessarily decided" when it was not entirely unnecessary to the judgment in the initial proceeding. Lucido, 51 Cal. 3d at 342.

**B.     Analysis**

MW argues that Starbrands' claim for breach of contract is precluded by the California state court judgment. In support, MW notes that in the California Action, Starbrands Norcal's cross-complaint involves the same nucleus of facts regarding Dr. Caplan's directing of revenue funds into a separate bank account. Dkt. No. 55 at 15-16. MW cites the following aspects of the California judgment in further support of its argument: (1) the California Action held that Starbrands Norcal had been properly terminated by Dr. Caplan in February 2012; (2) Starbrands Norcal was prohibited from interfering with Norcal's operations after February 2012; and (3) Starbrands Norcal was found to have breached its contract with Norcal. Id.

This Court finds that MW has not met its burden of establishing that issue preclusion applies. The primary issues at stake in the present action—whether MW committed gross negligence and whether MW breached its Agreement with Starbrands by failing to indemnify the company—were neither at issue nor necessarily decided in the California Action. In fact, the Agreement between MW and Starbrands was not material to the California Action. Moreover, the California Action does not assess the legal nature of the relationship that existed between Starbrands and Norcal from June 2010, the time of the alleged breach at issue in the instant action, to February 2012, when the California state court determined that the contract between Starbrands Norcal and Norcal had been terminated. See Ex. A ¶ 27.

MW has also failed to meet its burden of establishing that Starbrands Capital, LLC is the same as or is in privity with Starbrands Norcal MSO, LLC. MW attempts to establish privity by relying on Salah's March 7, 2013 deposition testimony. Dkt. No. 56, Ex. H. For the reasons stated herein, the Court may not consider deposition excerpts from the California Action at this stage of the case.

Finally, weighing against the application of issue preclusion is the fact that the present action will be adjudicated under Massachusetts law, while the former action was decided under California law.

This Court has found that Starbrands states a viable claim for breach of contract by plausibly alleging gross negligence on the part of MW, along with corresponding losses, and a refusal by MW to reimburse in violation of the Agreement's indemnification provision. Dkt. No. 45. As part of that claim, Starbrands alleges that the Agreement between Starbrands and MW identified Salah as the owner of Starbrands and the contact person for the account, and designated a specific Chase Bank account as the recipient bank account for funds. Compl. ¶¶ 12, 13. MW allegedly committed gross negligence by handling a request that was not signed by Salah and that listed a recipient bank account, federal tax identification number, and a merchant name that did not correspond to Starbrands. Id. ¶¶ 18-32, Ex. B. These specific allegations were not determined in the California Action. Nevertheless, MW asks this Court to ignore these allegations and the terms of the Agreement, and instead, to conclude that because a California court held that Starbrands Norcal did not have ownership or control of Norcal as of February 2012, MW could not have committed gross negligence by accepting the change request and by facilitating the diversion of Starbrands' revenue funds to Dr. Caplan's account beginning in June 2010.

This is a conclusion that the Court is unable to draw at this stage in the litigation. Accordingly, the Court finds that MW has not met its burden to establish issue preclusion sufficient to grant the motion to dismiss.

## IV.     CONCLUSION

For the foregoing reasons, I recommend that the District Judge assigned to this case deny MW's second motion to dismiss.

## V.     REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Rule 72(b) of the Federal Rules of Civil Procedure, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within fourteen days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

/s/ Jennifer C. Boal_____
JENNIFER C. BOAL
United States Magistrate Judge